IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK D. PRYOR, IV, | ) |
| Plaintiff, | ) Civil Action No. 19-1387 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 34 |
| ORLANDO HARPER, C.O. LENHART, and SGT. BYTNER, | ) |
| Defendants. | ) |

## OPINION

Plaintiff Frederick D. Pryor, IV ("Pryor") is an inmate at the State Correctional Institution at Pine Grove ("SCI – Pine Grove") and proceeding *pro se*, has filed his Third Amended Complaint pursuant to 42 U.S.C. § 1983. ECF No. 44.[1] Pryor brings claims against Defendants Orlando Harper ("Warden Harper"), C.O. Lenhart, and Sgt. Bytner (collectively, "Defendants") arising out of his incarceration at Allegheny County Jail ("ACJ"). Pryor alleges that Defendants violated his constitutional rights when they failed to protect him from a known risk of sexual assault and then retaliated against him when he sought to prevent a second assault by refusing to lock into his cell with his assailant.

Defendants responded to the Third Amended Complaint with the filing of a Motion to Dismiss. ECF No. 34. Defendants seek to dismiss all claims against Defendants in their official capacities, all claims against Warden Harper and Sgt. Bytner in their individual capacities, and Pryor's Fourteenth Amendment failure to protect claim for failure to state a claim upon which

---

[1] Pryor's Third Amended Complaint was originally docketed at ECF No. 33. Upon review of the original record, the Court identified a page that was not properly scanned onto the docket. As a result, the Third Amended Complaint, including all properly scanned pages, was redocketed at ECF No. 44.

1

relief may be granted. ECF No. 35. Pryor has filed his "Opposition to the Motion to Dismiss Amended Complaint." ECF No. 43. The Motion to Dismiss is ripe for consideration. For the following reasons, the Motion to Dismiss is granted in part and denied in part.[2]

I.     **FACTUAL BACKGROUND**

Pryor states that during the relevant period, he was a pretrial detainee at ACJ. ECF No. 44 ¶ 3. He alleges that on September 18, 2018, he was assigned a new cellmate, Inmate Booth, who was recently released from ACJ's Restricted Housing Unit ("RHU"). Id. ¶¶ 9-10. Inmate Booth informed Pryor that he was detained in the RHU for raping a transgender inmate, a crime for which he had been charged based on DNA testing. Id. ¶ 12. Pryor was concerned for his safety and spoke with C.O. Lenhart, the housing unit officer. C.O. Lenhart "laughed at him and instructed him to threaten Booth with harm." C.O. Lenhart required Pryor to lock into his cell. Id. ¶¶ 14-16. Once confined, Inmate Booth made several sexually harassing comments about Pryor's appearance. At the first available opportunity, Pryor brought his renewed concerns regarding Inmate Booth's "aggressive" behavior to C.O. Lenhart. Id. ¶¶ 17-19. C.O. Lenhart told Pryor to "go away" and did not report the complaints to a supervisor. Pryor was told to lock into his cell and Inmate Booth "hugged Plaintiff Pryor from behind and grabbed his penis." Id. ¶¶ 20-21.

When next released from his cell, Pryor reported the sexual assault to C.O. Lenhart. C.O. Lenhart did not investigate or report the incident but initiated a "code" because Pryor refused to lock back into his cell for the night. Sgt. Bytner responded and "informed Plaintiff Pryor that he was aware that they were going to have problems with Inmate Booth." Id. ¶¶ 24-25. Pryor was charged with disciplinary infractions and placed in the RHU for refusing to lock in the cell with Inmate Booth, despite the reported sexual assault. Id. ¶ 29. Pryor alleges that ACJ suffers a history

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case. ECF Nos. 6 and 27.

of "numerous reports" of sexual assault, rape and harassment, evidencing a custom of indifference to inmate safety. Id. ¶ 33.

Pryor seeks declaratory relief in the form of a finding that Defendants' conduct violated his constitutional rights, as well as compensatory and punitive damages for his injuries.

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231-35 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive

3

of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s of his claim]").

### 2. *Pro Se* Pleadings and Filings

*Pro se* pleadings and filings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should … be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997) (*overruled on other grounds*); see also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same).

That said, there are limits to the court's procedural flexibility — "pro se litigants still must allege sufficient facts in their complaints to support a claim .... they cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). Accordingly, because Plaintiff is a *pro se* litigant, this Court will consider the facts and make inferences where it is appropriate.

4

### III.  DISCUSSION

#### A. Official Capacity Claims

Pryor alleges claims against Warden Harper, Sgt. Bytner, and C.O Lenhart individually and in each Defendant's official capacity.   Defendants seek dismissal of the official capacity claims as inadequately stated. ECF No. 35 at 3-4. Official capacity claims alleged pursuant to 42 U.S.C. § 1983 are indistinguishable from claims against the entity that employs the officials. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. Pryor has not named Allegheny County as a defendant.  Thus, his official capacity claims against the named Defendants must be construed as claims against Allegheny County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. See Monell, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must ... specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" Id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff shows that a custom was the proximate cause of his injuries by showing that

5

the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." Id. (internal quotations and alterations omitted).

Pryor alleges that his reported concerns of assault were disregarded, as was the resulting sexual assault. Such conduct is alleged to comply with a pattern of "numerous reports of sexual assault, rape and harassment throughout the Allegheny County Jail that gives light to how staff treats those individuals with a deliberate indifference to them and their conditions which the warden is aware of the serious problems with his detention staff." ECF No. 44 ¶ 33. So stated, Pryor alleges a custom of indifference that caused the violation of his constitutional rights. At this initial stage of the litigation and given Pryor's *pro se* status, these allegations plausibly plead an official capacity claim sufficient to meet the Monell standard. Accordingly, the Motion to Dismiss Pryor's official capacity/Monell claims against all Defendants is denied.

### B. Claims against Defendants Harper and Bytner in their Individual Capacities

Defendants next seek to dismiss the individual capacity claims against Warden Harper and Sgt. Bytner because Pryor fails to allege their personal involvement or acquiescence in failing to protect him from assault and in otherwise retaliating against him for seeking to prevent an assault. ECF No. 35 at 4-5 (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Defendants assert that Pryor improperly seeks to "impute liability to Sgt. Bytner and Warden Harper based solely on their positions of authority." Id. at 5.

"Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012), *abrogated on other grounds as recognized in* Mack v. Yost, 968 F.3d 311 (3d Cir. 2020).  Pryor concedes that due to

6

ACJ's organizational structure and the timing of the assault, he fails to properly allege Warden Harper's direct involvement in his injury and agrees that dismissal of his individual claims against Warden Harper is appropriate. ECF No. 43 at 3. Accordingly, the Motion to Dismiss the individual claims against Warden Harper is granted.

As to Sgt. Bytner, Pryor points to allegations in the Third Amended Complaint that Sgt. Bytner knew Inmate Booth recently raped a transgender inmate and would present a "problem" to other inmates. Despite his apparent knowledge of the risk of assault, Sgt. Bytner failed to protect Pryor from a substantial risk of assault when he failed intercede in Inmate Booth's assignment to Pryor's cell. ECF No. 43 at 4; ECF No. 44 ¶ 25. Such allegations are not based on Sgt. Bytner's supervisory role, but on his direct and personal failure to protect Pryor from a known risk of harm. Thus, the Motion to Dismiss individual claims against Sgt. Bytner is denied.

### C.  Sufficiency of Fourteenth Amendment Failure to Protect Claim

Defendants also move to dismiss Pryor's Fourteenth Amendment failure to protect claim as an inadequately stated challenge to his choice of a cellmate. ECF No. 35 at 6. According to Defendants, in view of the judicial deference ordinarily accorded prison administrators for discretionary housing decisions, Pryor's claim should be dismissed. Id. (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

As noted, Pryor alleges that at the time of the incident, he was housed at ACJ as a pretrial detainee. ECF No. 44 ¶ 3. Because one may not be punished prior to conviction and sentencing, the Due Process Clause of the Fourteenth Amendment prohibits prison officials from imposing conditions that amount to punishment of a pretrial detainee. Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005), citing Bell v. Wolfish, *supra*. Therefore, pretrial detainees are afforded greater constitutional protection under the Fourteenth Amendment than that provided to convicted

prisoners under the Eighth Amendment. Id. at 167 n. 23 (citation omitted); and see, Imhoff v. Temas, 67 F. Supp. 3d 700, 708–09 (W.D. Pa. 2014). However, courts apply the same legal framework under both the Eighth and Fourteenth Amendments for determining whether a defendant is liable for failure to protect. Paulino v. Burlington Cnty. Jail, 438 F. App'x 106, 109 (3d Cir. 2011).

> To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm.

Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (internal quotation marks and citations omitted). The test for deliberate indifference is two-fold: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Court finds that Pryor plausibly alleges that Inmate Booth presented a substantial risk of serious harm and that Sgt. Bytner and C.O. Lenhart were aware of the risk to inmate safety prior to the assault. First, Pryor alleges facts that plausibly permit the inference that both Defendants were aware of Inmate Booth's recent detention in the RHU and criminal charges for rape of another inmate. Second, Pryor alleges that he raised specific complaints to C.O. Lenhart regarding Inmate Booth's "aggressive" sexual harassment and his fear of an impending assault. In addition, Sgt. Bytner conceded that he anticipated "problems" for anyone sharing a cell with Inmate Booth to permit a plausible inference that he was aware of a specific risk of harm. Finally, Pryor alleges an ACJ custom of ignoring reports of sexual harassment, assault, and rape and that this history presents a danger of assault to all inmates. These allegations, which must be accepted as true at this initial stage of the litigation, support more than a speculative risk of harm that courts have

routinely found inadequate to support a failure to protect claim. See <u>Bistrian</u>, 696 F.3d at 369-71 (rejecting an inference of deliberate indifference based solely on an inmate's propensity for violence). Accordingly, the Motion to Dismiss Pryor's Fourteenth Amendment claim is denied.

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 34, is granted as to the individual claims asserted against Warden Harper and is denied in all other respects.

Dated:  January 5, 2021                                              BY THE COURT:

                                                          */s/ Maureen P. Kelly*
                                                          MAUREEN P. KELLY
                                                          UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record via CM/ECF

       Frederick D. Pryor, IV
       HS-0551
       SCI Pine Grove
       191 Fyock Road
       Indiana, PA 15701